1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ELONZA J. TYLER, | ) | 1:06-cv-00091 LJO DLB P |
| | ) | |
| Plaintiff, | ) | FINDINGS AND RECOMMENDATIONS |
| | ) | RECOMMENDING THAT |
| v. | ) | DEFENDANT'S MOTION FOR |
| | ) | SUMMARY JUDGMENT BE GRANTED, |
| G. TULP, | ) | THUS CONCLUDING THIS ACTION IN |
| | ) | ITS ENTIRETY |
| Defendant. | ) | |
| _____ | ) | (Doc. 25) |

**Defendant's Motion for Summary Judgment**

**A.    Procedural History**

Plaintiff Elonza Tyler ("plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on plaintiff's complaint, filed January 27, 2006, against defendant Tulp ("defendant") for retaliation. On January 22, 2008, defendant filed a motion for summary judgment. (Doc. 25.) After obtaining an extension of time, plaintiff filed an opposition on March 18, 2008. (Doc. 31.). On March 28, 2008, defendant filed his reply and response to plaintiff's opposition and statement of disputed facts (Docs. 32, 33).

**B.    Summary Judgment Motion Standard**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and

1    to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at

2    587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

3         In resolving the summary judgment motion, the Court examines the pleadings, depositions,

4    answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P.

5    56(c).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all

6    reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor

7    of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654,

8    655 (1962) (per curiam).  Nevertheless, inferences are not drawn out of the air, and it is the opposing

9    party's obligation to produce a factual predicate from which the inference may be drawn.  Richards v.

10   Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

11   1987).

12        Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that

13   there is some metaphysical doubt as to the material facts.  Where the record taken as a whole could not

14   lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"

15   Matsushita, 475 U.S. at 587 (citation omitted).

16   **C.    Undisputed Facts**

17   1.   At all times relevant to the complaint, plaintiff was a state prisoner in the custody of the

18        California Department of Corrections and Rehabilitation (CDCR) and incarcerated at California

19        State Prison - Avenal (CSP-Avenal), located in Avenal, California.

20   2.   At all times relevant to the complaint, defendant was an employee of CDCR who worked as a

21        Correctional Sergeant at CSP-Avenal.

22   3.   In 2004 and 2005, plaintiff was engaged in various litigation activities, including the filing of

23        grievances, a petition for habeas corpus, and state court actions.

24        Retaliation Claim - May 14, 2005 Incident

25   4.   On May 14, 2005, Officer Pressley was working as a housing unit officer in Building 520 at

26        CSP- Avenal.

27   5.   On May 14, 2005, Officer Pressley received a telephone call from a Medical Technical Assistant

28        (MTA) at the Facility 5 medical clinic office informing him that plaintiff had failed to show up

1    to take his medication.  Officer Pressley was given instructions to speak with plaintiff and have

2    him come to the medical clinic to take his medication.

3  6.   Officer Pressley called plaintiff to the podium of the building and ordered him to report to the

4    medical clinic to take his medication.

5  7.   Plaintiff refused to follow Officer Pressley's orders to report to the medial clinic for purposes

6    of taking his medication.

7  8.   As a result of plaintiff's refusal to follow his orders, Officer Pressley called defendant to notify

8    him of the situation.

9  9.   There are approximately 150-200 inmates housed in Building 520.  In defendant's experience,

10    a situation in which an inmate refuses to cooperate with an officer's simply orders can quickly

11    escalate into a more serious problem.

12  10.   Defendant instructed Officer Pressley to place plaintiff in restraints and wait until he arrived at

13    the scene to speak with plaintiff himself.

14  11.   Officer Pressley called plaintiff to the podium again, took him to the building staff office, placed

15    him in handcuffs, and waited for defendant to arrive.

16  12.   When defendant entered the staff office, he asked plaintiff why he was refusing to obey a direct

17    order to report to the medical clinic.

18  13.   Plaintiff informed defendant that he could take his medication on an "as needed" basis.

19  14.   Defendant the plaintiff discussed the situation.

20  15.   During the discussion, defendant raised his voice.

21  16.   Defendant again ordered plaintiff to report to the medical clinic and told him that if there was

22    any confusion, it needed to be straightened up by the MTA at the medical clinic.

23  17.   Plaintiff eventually agreed to report to the medical clinic, without further incident.

24  18.   Plaintiff received no physical injuries as a result of the May 14, 2005 incident.

25  19.   Before the May 14, 2005 incident, defendant had no previous problems with plaintiff.

26  20.   Before the May 14, 2005 incident, plaintiff had no previous problems with defendant.

27  21.   Before the May 14, 2005 incident, plaintiff had never filed a grievance against defendant.

28  22.   After their May 14, 2005 encounter, defendant never spoke with plaintiff regarding the incident

1    or the grievance plaintiff later filed against him related to this incident.

2    Retaliation Claim - July 28, 2005 Incident[1]

3    23.    On July 28, 2005, plaintiff was playing chess with another inmate in the day room of Building

4           520.

5    24.    That day, defendant was on duty as a Correctional Sergeant for Facility 5.

6    25.    Defendant is an avid chess player and frequently, while on duty, watches chess games being

7           played between inmates at CSP - Avenal.

8    26.    On the date of the alleged incident, defendant walked over to plaintiff's chess game and observed

9           the game between plaintiff and his inmate opponent.

10   27.    Defendant made disparaging comments towards plaintiff's chess opponent regarding his choice

11          of moves against plaintiff.

12   28.    At no point during the game did defendant make any comment or statement to plaintiff.

13   29.    Plaintiff received no physical injuries as a result of the July 28, 2005 incident.

14   Plaintiff's Claim for Emotional Distress

15   30.    Plaintiff claims that the May 14, 2005 and July 28, 2005 incidents with defendant have caused

16          him emotional distress, including loss of sleep and paranoia.

17   31.    In an effort to address plaintiff's claims of emotional injuries, defendant contends that Dr. D.

18          Silbaugh, Chief Psychologist at California Medical Facility (CMF), where plaintiff is currently

19          housed, reviewed the mental health portion of plaintiff's medical file.

20   32.    After carefully reviewing plaintiff's file and exercising his medical expertise, based upon Dr.

21          Silbaugh's education, training and experience, he concluded that plaintiff did not suffer any

22          demonstrated undue or increased psychological effects from the events of May 14, 2005 and July

23          28, 2005.

24   ///

25

26   _____

27          [1] Plaintiff contends that the incident occurred on August 2, 2005 and not July 28, 2005, which plaintiff attributes
     to be a typo.  However, the date of the incident is not material given the court's finding that plaintiff has not submitted any
     evidence that defendant's actions were adverse to plaintiff, or that defendant acted with the requisite retaliatory intent.  See
28   pp.9-11 below.

**D.      Retaliation Claim - May 14, 2005 Incident**

In his complaint, plaintiff alleges that defendant Tulp retaliated against plaintiff for filing grievances and filing redress of grievances in state court.  Plaintiff alleges that on May 14, 2005, defendant Tulp ordered Correctional Officer Pressley to take plaintiff into a small room and handcuff him in his wheelchair for not showing up to take pain medication.  Plaintiff alleges that defendant yelled, screamed and cursed at plaintiff, splattering saliva onto plaintiff's face.  Plaintiff alleges that these actions were retaliatory.

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim.  Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).  The court must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory."  Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995) (quoting Sandin v. Conner, 515 U.S. 472, 482 (1995)).  The burden is on plaintiff to demonstrate "that there were no legitimate correctional purposes motivating the actions he complains of."  Pratt, 65 F.3d at 808.

Defendant argues that he is entitled to summary judgment based on the following.  On May 14, 2005, Officer Pressley was working as a housing unit officer in Building 520 at CSP- Avenal. (Undisputed Fact 4). On May 14, 2005, Officer Pressley received a telephone call from a Medical Technical Assistant (MTA) at the Facility 5 medical clinic office informing him that plaintiff had failed to show up to take his medication.  Officer Pressley was given instructions to speak with plaintiff and have him come to the medical clinic to take his medication (Undisputed Fact 5). Officer Pressley called Tyler to the podium of the building and ordered him to report to the medical clinic to take his medication. (Undisputed Fact 6). Plaintiff refused to follow Officer Pressley's orders to report to the medial clinic for purposes of taking his medication. (Undisputed Fact 7).  As a result of plaintiff's refusal

1   to follow his orders, Officer Pressley called defendant to notify him of the situation. (Undisputed Fact

2   8). There are approximately 150-200 inmates housing in Building 520.  In defendant's experience, a

3   situation in which an inmate refuses to cooperate with an officer's simply orders can quickly escalate

4   into a more serious problem.  (Undisputed Fact 9).  Defendant instructed Officer Pressley to place

5   plaintiff in restraints and wait until he arrived at the scene to speak with plaintiff himself. (Undisputed

6   Fact 10).  Officer Pressley called plaintiff to the podium again, took him to the building staff office,

7   placed him in handcuffs, and waited for defendant to arrive.  (Undisputed Fact 11).  When defendant

8   entered the staff office, he asked plaintiff why he was refusing to obey a direct order to report to the

9   medical clinic.  (Undisputed Fact 12).  Plaintiff informed defendant that he could take his medication

10  on an "as needed" basis.  (Undisputed Fact 13).  Defendant and plaintiff discussed the situation.

11  (Undisputed Fact 14)   During the discussion, defendant raised his voice.   (Undisputed Fact 15).

12  Defendant again ordered plaintiff to report to the medical clinic and told him that if there was any

13  confusion, it needed to be straightened up by the MTA at the medical clinic. (Undisputed Fact 16).

14  Plaintiff eventually agreed to report to the medical clinic, without further incident. (Undisputed Fact 17).

15  Before the May 14, 2005 incident, defendant had no previous problems with plaintiff.(Undisputed Fact

16  19). Before the May 14, 2005 incident, plaintiff had no previous problems with defendant Before the

17  May 14, 2005 incident, plaintiff had never filed a grievance against defendant. (Undisputed Fact 20).

18  Defendant contends that at the time of the incident, defendant had no knowledge of plaintiff's history

19  of filing grievances against other correctional officers and staff members or the fact that he help other

20  inmates with their grievances. (Doc. 25, Tulp Decl., ¶14.).  Defendant further contends that plaintiff

21  admits that he possesses no evidence that at the time of the incident, defendant knew or had any

22  knowledge of plaintiff's history for legal activity against other prison officials.  (Doc. 25, Gatling Decl.,

23  Ex. C at 29:7-31:8).

24       In an effort to address plaintiff's claims of emotional injuries, defendant contends that Dr. D.

25  Silbaugh, Chief Psychologist at California Medical Facility (CMF), where plaintiff is currently housed,

26  reviewed the mental health portion of plaintiff's medical file. (Undisputed Fact 31).  After carefully

27  reviewing plaintiff's file and exercising his medical expertise, based upon Dr. Silbaugh's education,

28  training and experience, he concluded that plaintiff did not suffer any demonstrated undue or increased

1   psychological effects from the events of May 14, 2005 and July 28, 2005. (Undisputed Fact 32).

2       Defendant argues that he is entitled to summary judgment because he lacked the requisite

3   retaliatory intent, the alleged retaliatory conduct served legitimate penological interests, and plaintiff did

4   not suffer an injury or chilling of his protected First Amendment rights as a result.

5       The court finds that defendant has met his initial burden of informing the court of the basis for

6   his motion, and identifying those portions of the record which he believes demonstrate the absence of

7   a genuine issue of material fact.  The burden therefore shifts to plaintiff to establish that a genuine issue

8   as to any material fact actually does exist. See  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475

9   U.S. 574, 586 (1986).  As stated above, in attempting to establish the existence of this factual dispute,

10  plaintiff may not rely upon the mere allegations or denials of his pleadings, but is required to tender

11  evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of

12  its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391

13  U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).

14      Defendant does not dispute that filing prison grievances is a protected activity, and for the

15  purposes of this motion for summary judgment only, defendant admits that his actions on May 14, 2005

16  were adverse to plaintiff.   At issue then, is whether defendant possessed the requisite retaliatory intent,

17  whether his conduct advanced a legitimate correctional goal, and whether such conduct chilled plaintiff's

18  rights.

19      A prisoner must submit evidence, either direct or circumstantial, to establish a link between the

20  exercise of constitutional rights and the allegedly retaliatory action.  Pratt, 65 F.3d at 806.  In the instant

21  case, plaintiff filed exhibits demonstrating his litigation activity, and asserts that because "plaintiff filed

22  and continued to file grievances for him self and other inmates at [Avenal State Prison] to which he

23  alleges prison staff including Sgt. Tulp, were more likely than not likely to of known of plaintiff's

24  ongoing complaints of which he asserts was the basis of these offense retaliatory acts against him".

25  (Doc. 31, p.5 ¶13). Plaintiff also asserts that because defendant holds a supervisory position, it is his

26  responsibility to be aware of "complaints filed against the subordinate employees and other staff

27  members that he assumes supervisory responsibility thereof." (Id., p.8:11-14).   Although plaintiff

28  establishes his prolific litigation activity, plaintiff has offered no evidence that defendant was aware of

1  plaintiff's litigation activities, only conjecture.  Plaintiff's conclusory allegations are insufficient to

2  establish a link between the exercise of constitutional rights and the allegedly retaliatory action, or that

3  defendant knew of plaintiff's litigation activities on May 14, 2005.

4       Plaintiff further bears the burden of proving "that there were no legitimate correctional purposes

5  motivating the actions he complains of." Pratt, 65 F.3d at 808.  Plaintiff contends that screaming, yelling

6  and cursing at plaintiff while he was in a wheelchair and handcuffed, and causing "particles of spit" to

7  land on plaintiff, serves no penological purpose. (Doc. 1, Complaint, p.6, Doc. 31. p.6:2-7).  Maintaining

8  order is a legitimate correctional goal, and plaintiff has not set forth evidence demonstrating that

9  defendant's actions were not motivated by *any* legitimate correctional goal.

10       Finally, plaintiff contends that as a result of defendant's conduct on May 14, 2005, plaintiff

11  suffers from emotional injuries that include a fear of sleeping in fear of retaliation, and a general fear

12  of correctional staff.  In light of plaintiff's failure to proof concerning two essential elements of

13  plaintiff's case - establishing defendant's retaliatory intent, and the lack of any legitimate correctional

14  purpose  - whether plaintiff suffered any chilling effect is rendered immaterial.  Celotex.

15       In conclusion, the court finds that plaintiff has not submitted evidence raising any triable issues

16  of fact with respect to his retaliation claim relating to the May 14, 2005.  Specifically, plaintiff has not

17  submitted any evidence that defendant possessed the requisite retaliatory intent, or that the defendant's

18  alleged retaliatory conduct did not reasonably advance any legitimate correctional goal.  Rhodes.

19  Accordingly, defendant is entitled to judgment as a matter of law on plaintiff's retaliation claim relating

20  to the May 14, 2005 incident.

21  **E.       Retaliation Claim - July 28, 2005 Incident**

22       In his complaint, plaintiff alleges that defendant Tulp entered plaintiff's housing unit, and for

23  approximately twenty minutes, observed plaintiff playing chess with another inmate.  Plaintiff alleges

24  that defendant said nothing to plaintiff, but was standing over him, making derogatory comments. In his

25  deposition testimony, plaintiff confirms that defendant did not say anything directly to plaintiff. (Depo.

26  Transcript p.34).  Plaintiff alleges that he became nervous and tense, and even after defendant left,

27  plaintiff remained unfocused and discomposed.

28       Defendant contends that, even accepting all of plaintiff's allegations as true, defendant's actions

do not amount to an adverse act against plaintiff.  Defendant further contends that he lacked the requisite retaliatory intent, and that plaintiff did not suffer an injury or chilling of his protected First Amendment rights as a result.

Adverse action is action that "would chill a person of ordinary firmness" from engaging in that activity.  Pinard v. Clatskanie School Dist., 467 F.3d 755, 770 (9th Cir. 2006); White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000); see also Lewis v. Jacks, 486 F.3d 1025, 1028 (8th Cir. 2007); see also Thomas v. Eby, 481 F.3d 434, 440 (6th Cir. 2007); Bennett v. Hendrix, 423 F.3d 1247, 1250-51 (11th Cir. 2005); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005); Gill v. Pidlypchak, 389 F.3d 379, 381 (2d Cir. 2004); Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).   Both litigation in court and filing inmate grievances are protected activities and it is impermissible for prison officials to retaliate against inmates for engaging in theses activities.  However, not every allegedly adverse action will be sufficient to support a claim under section 1983 for retaliation. In the prison context, cases in this Circuit addressing First Amendment retaliation claims involve situations where the action taken by the defendant was clearly adverse to the plaintiff.  Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005) (arbitrary confiscation and destruction of property, initiation of a prison transfer, and assault in retaliation for filing grievances); Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004) (retaliatory placement in administrative segregation for filing grievances); Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003) (retaliatory validation as a gang member for filing grievances); Hines v. Gomez, 108 F.3d 265, 267(9th Cir. 1997) (retaliatory issuance of false rules violation and subsequent finding of guilt); Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995) (retaliatory prison transfer and double-cell status in retaliation); Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989) (inmate labeled him a snitch and approached by other inmates and threatened with harm as a result); Rizzo v. Dawson, 778 F.2d 527, 530-32 (9th Cir. 1985) (retaliatory reassignment out of vocational class and transfer to a different prison).

Plaintiff has provided neither argument nor evidence demonstrating that defendant's actions were sufficiently adverse to plaintiff to support a retaliation claim, instead choosing to argue that defendant's

1   arguments are contradictory and intended to obstruct justice.[2]  Drawing all reasonable inferences that

2   may be drawn from the facts placed before the Court in favor of plaintiff, and accepting all plaintiff's

3   allegations as true, the court does not find that the action taken by defendant is the type of adverse action

4   sufficient to support a claim for retaliation. Gill, p.381. (only retaliatory conduct that would objectively

5   deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights

6   constitutes an adverse action for a claim of retaliation) (citations and quotations omitted).

7          Further, as previously explained, a prisoner must submit evidence, either direct or circumstantial,

8   to establish a link between the exercise of constitutional rights and the allegedly retaliatory action. Pratt,

9   65 F.3d at 806.  Again, plaintiff's conjecture that defendant Tulp was more likely aware than not of

10  plaintiff's litigation activity is insufficient to establish a link between the exercise of constitutional rights

11  and the allegedly retaliatory action, or that defendant knew of plaintiff's litigation activities on July 28,

12  2005.

13         In conclusion, the court finds that plaintiff has not submitted evidence raising any triable issues

14  of fact with respect to his retaliation claim relating to the July 28, 2005.  Specifically, plaintiff has not

15  submitted any evidence that defendant's actions were adverse to plaintiff, or that defendant possessed

16  the requisite retaliatory intent.  Accordingly, defendant is entitled to judgment as a matter of law on

17  plaintiff's retaliation claim relating to the July 28, 2005 incident.

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24

25         [2] Plaintiff contends that in defendant's declaration and in response to plaintiff's requests to admit, defendant states
that he does not remember any incident involving plaintiff on July 28, 2005.  Plaintiff contends that this directly contradicts
26  Defendant's Undisputed Facts 25 - 27, which state that defendant observed a chess match between plaintiff and another
inmate, and made disparaging comments towards the other inmate.  However, the court notes that in defendant's declaration,
27  he states that it is possible that he observed the chess match, and in both his statement of undisputed facts and in his reply
to plaintiff's opposition, defendant states that it is solely for the purpose of this motion for summary judgment that he does
28  not dispute plaintiff's allegations concerning the July 28, 2005 incident.

**F.      Conclusion**

Based on the foregoing, the court finds that defendant is entitled to judgment as a matter of law. Accordingly, the court HEREBY RECOMMENDS that defendant's motion for summary judgment, filed January 22, 2008, be GRANTED, thus concluding this action in its entirety.  Based on this finding and recommendation, the court does not reach the parties' other arguments.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:    **June 30, 2008**          **/s/ Dennis L. Beck**
UNITED STATES MAGISTRATE JUDGE